We will now hear counsel in court. May it please the court, your honor, my name is Michael Fortunato from Reuben Fortunato and Harbison. We represent the appellant Merrill Lynch Pierce Fenner&Smith Inc. I'd like to reserve three minutes of rebuttal time, your honor. Thank you. Your honors, this case raises an important issue that sort of harkens us back to the days of judicial hostility to arbitration awards. I have to ask you a question. I don't understand what happened in this case. You know, usually you have the feeling that, well you don't usually, but sometimes you get the feeling that there's something here that you don't understand. Why did Merrill Lynch hire this woman who had a bad record at Smith Barney and make her this unbelievably favorable agreement and give her... It didn't turn out so favorably. Well, give her $850,000 loan. I mean, what magic did she have that caused Merrill Lynch, which is a regular woman, to do this? I think that's an excellent question, your honor. Going back ten years, she was hired in 2002 and it was before the evidence that was marshaled in the arbitration. It was before that Merrill Lynch was aware that there were security problems or the compliance people were one step behind Merrill Lynch. You mean they didn't check her out? Well, sure. There's all sorts of regulatory issues, but the customer complaints involving Ms. Schwarzwalder, although they're not of record in this proceeding, were customer complaints that followed her after she joined Merrill Lynch. So her customers that she serviced at Smith Barney made complaints either at the time she was leaving Smith Barney and coming to Merrill Lynch or after she had already joined Merrill Lynch. So she lasted basically a year at Merrill Lynch before she put herself out on disability. And then she had some sort of disability. I guess maybe you're not allowed to ask if you have any disability now. I know. When we hire people, we have to be very careful. And I think that's right, your honor. But the disability was the quote-unquote stress that followed the compliance investigations from the regulatory authorities and the customer complaints that flowed after she joined the firm. So she put herself out on disability in 2003 under Merrill Lynch's plans. She was a full-time employee. She's entitled to 26 weeks of short-term disability. And then she's entitled to... Two years of long... Two years of long-term disability, which would still not have gotten her through the length of a promissory note with the company. And what about the business acumen of Merrill Lynch that they did that? Well, I think it's a fair comment, your honor, to say that maybe they should have known or should have been more scrupulous before they hired her. But in connection with competitive hires, employment decisions throughout any organization that's problematic. Okay. I just have to get that out because I couldn't understand what was behind all this. Well, I'm sure that there are a number of lawyers at Bank of America and Merrill Lynch that have been asking the same question over the last decade, your honor. So I don't want to suggest that... And they get more money than I do. ...that you're alone in that discussion. But the reality is that the amount that was at stake on the two-year long-term disability policy, which was up to $60,000, was not a claim, but it was litigated on the ERISA claim. First, MetLife as the administrator in the underlying ERISA claim, which has been subsequently settled before a hearing in this court. The reality on that issue was that the administrator had denied the claims and then the court remanded it back to MetLife as the administrator. MetLife denied again. Ultimately, a determination is made that she's entitled to these disability benefits. She's entitled to disability payments. I'm looking at the contract, which says that in the event that Schwarzwalder's employment is terminated by Merrill Lynch or in the event of Schwarzwalder's, and I'll truncate it, disability, Schwarzwalder will no longer be entitled to monthly transition compensation payments. Instead, Merrill Lynch agrees to pay Schwarzwalder a lump sum equal to the remaining transition compensation payments through November 2007. That's the whole rest of the loan. Yeah. I mean, she's found disabled. Why doesn't that provision kick in? That's exactly the issue that was raised at the arbitration, and what the arbitration panel found was a procedural issue. The arbitration, Ms. Schwarzwalder never asserted that as a breach of contract claim. When we look at that and you say to yourself, okay, the promissory note is a separate unconditional, this is what the panel found. Maybe she has a malpractice claim against her lawyer for not asserting as an affirmative claim instead asserting it as an affirmative defense. I wouldn't wish that on any lawyer, Your Honor, but I think that that's a fair reading. The reality is that the arbitration panel said, these are separate and distinct contracts. This is a promissory note, an unconditional promise to repay Merrill Lynch. We're going to give Merrill Lynch its money back plus attorney's fees. Well, what would be your defense if she had asserted it as an affirmative claim for relief? Well, had she asserted as affirmative claim for relief, what we were prepared to litigate in the arbitration was that the standard for disability that the court undertook and Judge McVery undertook in making the ERISA determination is different than this panel making its own separate and distinct determination as to whether she was truly disabled under the terms of the plan. The amount of money at stake on the ERISA claim was de minimis compared to the amount of money at stake, 700 and some odd thousand dollars in making that determination. What the arbitration panel found was, listen, we're not going to rethink Judge McVery's decision on the ERISA claim. We're just telling you that we believe that this is a breach of contract claim that you should have asserted, number one. Number two, you litigated the ERISA claim to conclusion. It was on appeal to the Third Circuit and you'd entered into a settlement agreement. We believe that even if you had asserted a claim for those payments under the contract, which you should have done and you did not, we would have believed that you released that claim under the language of the settlement agreement. How was the ERISA case settled? Well, it was settled, I believe it was settled before this court heard appeal on whether the underlying court made a mistake in interpreting the ERISA claim. So the terms of the resolution are confidential. But there was a settlement agreement and release, which was presented to the arbitration panel. The release released certain claims. And this arbitration panel said, we believe that had you even asserted a claim for the disability benefits in this arbitration for the monthly transition compensation payments, saying you owe them to me under this contract because I've been deemed disabled under your plans, the arbitration panel said, wait, that's not a defense. That's a claim. That's a claim that you should have raised and you did not. And it's a claim that has subsequently been released. And our opinion. So now you get to Judge Schwab on the motion to vacate the award. And the test is, and I think this is just a clear rifle shot issue for this court. Your language has been and the Supreme Court's language has been and Congress's language has been under 10A4 of the Federal Arbitration Act, there must be, quote, absolutely no support at all in the record to justify the arbitration award. And I don't know how you can look at the facts of this case and know that the panel construed the promissory note and they construed the employment agreement and they construed the settlement agreement. Judge Sloviter, back in your teenage years in 1982, you wrote, in fact, in a case, your language was, federal courts are not to substitute, this is the ARCO case, federal courts are not to substitute their own judgment. It's the arbitrator's construction of these agreements that was bargained for and that it must be totally unsupported by the principles of contract construction before the court will even weigh in on the decision. And this court, in August of 2010, in the REO case, made the same rulings. You said, look, what we're talking about here is not empty, hollow words, absolutely no support at all in the record to justify the awards. I think the word you said, quite deferential. Also in ARCO, this court said, and I'm quoting, it should be clear that the test used to probe the validity of an arbitrator's decision is a singularly undemanding one. So when faced with that record, when faced with the record that, okay, I, Judge Schwab, may not have agreed with the arbitrator's decision. I may not have. I may have said, well, she was disabled under the terms of the plan and you should have paid her. But the arbitration, that's not the test. The test is not whether he would have agreed with the panel members or not. The test is, was there any basis at all in the record? And if you don't, and if you say under this record that you've satisfied the absolutely no support at all in the record justifying the arbitration decision, then those words are empty. I was just reminded sitting at a wedding, it sounded like the banging gong or the clanging cymbal that we hear about all the time. Those words would have no meaning to this court if under these circumstances the award can be vacated on those terms. And the reality is that in this particular instance, what Judge Schwab said, and he wasn't shy about it, he said all the right things, but then he did exactly the wrong thing. Because he said, I believe that this is simply an employee forgivable loan and therefore I would have decided it differently. Well, again, that's not the test for him to apply. And in fact, he goes on to page six of his opinion to say that I think this is an employee forgivable loan and he cites other cases. Quite frankly, cases that Ms. Schwartzwalder did not give to the arbitration panel and cases that there were 40 citations that she made to the district court on law that she never provided to the arbitration panel. So to the extent that you're doing a Danova review, this idea that the arbitrators were guilty of misconduct, she was given all the opportunity to fill the record at the arbitration by the panel. The panel heard a motion for summary judgment over our objection because motions for summary judgment aren't appropriate under the party's agreement to arbitrate. Mr. Fortunato, Judge Zanasky read to you language from the employment agreement. Is it your understanding that the arbitrators thought that the employment agreement and the promise of the loan agreement were separate documents, not to mesh with one another? Absolutely, Your Honor. And they believe that the promissory note was a separate and distinct document from the employment agreement. And if you want it, money under the... That's a pretty hard sell, isn't it? I don't think so, Your Honor, because if you look, although the... Look at it this way. If Ms. Schwartzwalder had gotten the $850,000 up front and she had simply repaid that promissory note out of her own personal fortune, she said, I'm going to pay this money back. She still would have been titled had she not left the firm. She still would have been entitled to monthly transition compensation payments. Mr. Fortunato, Judge Sloviter very sensibly, I think, wanted to find out what context we're working in. Are we to suppose that there was an employment agreement entered into in November and two weeks later there was a loan agreement entered into? And the loan agreement was a total surprise to the negotiators of the employment agreement. Oh, look, now we have an... Of course not, Your Honor. I'm not even suggesting that. All I'm saying is that they were both entered into at the time of her employment. Would the case be different if these provisions were in the same piece of paper? I suppose that the case could be different if they were in the same piece of paper, or the case could even be different if Ms. Schwartzwalder had said, I am suing you for breach of that agreement. But the reality is that the types of forgivable loans that Judge Schwab looked at are different than the types of forgivable loans that were, that are impacted in this particular instance or that were in play for Ms. Schwartzwalder. But more importantly, Your Honor, the standard simply for this court de novo for the district court was, is that a completely irrational decision? Isn't it fair for the arbitrators to say we construe this agreement, Judge Pollack, to be separate and distinct from the promissory note? Look, I mean, here's where I have a little bit of problem understanding the rationality of the arbitration panel's decision. You clearly have raised in the arbitration pleadings the employment agreement and its provisions dealing with this lump sum payment as a defense to the enforceability of the promissory note. And so the issue seems to be teed up, and all they're saying is you didn't present it in the right format. And what's the, I'm having trouble understanding, what's the difference between presenting it as an affirmative defense or an affirmative claim for relief? Well, I think the difference is that she made certain claims in the contract. She said, I have this employment contract that entitles me to certain bits of compensation, and I'm going to make a claim for some bits of this compensation. But she failed to make a claim for the, for the monthly transition compensation. And what the arbitration panel was doing in the context of their decision was, look, you didn't bring the claim, plus you signed a release in connection with the underlying disability decision. So we believe that if you put those two pieces of the puzzle together, that you should have asserted as a claim and you didn't, and even if you did, Judge Van Aske, you have released it. So, Your Honor, I see that my time has expired. If there's any further, I've reserved three minutes for rebuttal. If there's any further questions on that topic, I'd be happy to answer them. I'm fine. Okay. We'll hear you on rebuttal. Thank you, Your Honor. Good morning. My name is Joseph Chivers. I'm representing Ms. Schwarzweiler. You have to get on the tape to say your name. Excuse me. You have to get on the tape to say your name. My name is. What you just said didn't come through. Thank you. My name is Joseph Chivers, and I represent Ms. Schwarzweiler. I'd like to reserve three minutes if I could. No. No. No. You can't reserve three minutes. I can't. You can't reserve three minutes. He gets the last say. You can't. All right. You can endorse Mr. Fortunato's rebuttal, if you want. Of course. Well, then, let me address a couple of things, given the nature of the questions that preceded me. I looked at this from the beginning in terms of language, the language of the employment agreement, the language of the promissory note, and the language of the release. And the release, this is what the panel depended upon in saying that somehow Ms. Schwarzweiler had no opportunity whatsoever to assert anything with respect to the loan, the outstanding loan balance. Well, if you take a look at the language, this is what Judge Schwab did. If you take a look at the language of the employment agreement, and, Judge Van Aske, you were reading the very language, it is unmistakable that there is a direct connection between the monthly compensation payments and cancellation of the debt. It says, less any outstanding debts. A good question that Judge Pollack asked, which was, are we to suppose that the parties entered into this agreement back in November of 2002 and weren't negotiating at the very same time the nature of this loan? For heaven's sakes, that was integral. That's a significant part of any deal, certainly one of this nature. You call this a pass-through agreement. What's a pass-through agreement? Well, basically, with the money, you really, the purpose of being paid these so-called transition compensation payments is not to actually pay you money directly but just pass it through, pass it through you for the purpose of reducing the amount owed. So, in other words, what happens, Your Honor, and, by the way, in the brief that I provided, we cited all sorts of cases. Merrill Lynch itself has argued this many, many times. We cited a number of them like the Hopgood case, the Killian case, and the Donaldson case. In each instance, Merrill makes the same kind of an argument that somehow these are separate instruments or separate transactions. In fact, the courts have consistently found you can't separate them. For heaven's sakes, people entered into this agreement for the very purpose of passing along this $800,000, and then making provisions over a five-year period of time for the regular payoff of that loan. For example, a question was asked of Mr. Fortunato, are you trying to, how can you separate these two when, in fact, the monthly compensation payments of $16,687.15 are exactly, to the penny, the amount in the promissory note? What, mathematically? Are we supposed to suppose that it's one in a five billion or five trillion chance that those would be the same numbers if they weren't? Let me see if I understand the deal then. She gets $850,000, essentially a signing bonus. That's essentially. Doesn't have to pay tax on it then. Not at that time. Right. So she gets these $16,000 and some odd dollar payments. They're taxable. Although it might be in the same amount of the payments, she has to first have the withholding taken out of it, and then she pays back. How does she pay back the $16,000 per month? Each month Merrill is making payments to satisfy that amount. So in other words, that's where the pass-through notion comes through. Okay. Yeah. So at any rate, Your Honor, coming back to this whole notion, how can you read the employment agreement and the promissory note, look at them and say these are separate documents? And I think it's fascinating from the beginning of this, this proceeding has basically been going on since 2000, late 2003, early 2004. Why? I started this, and I started it on behalf of Ms. Schwartzwelder to get her long-term disability. If I could, Your Honor, Judge Slobiter, one of the things I think has been really terrible since the beginning of this proceeding, Merrill, for whatever the reason, has made it a point to try to sully Ms. Schwartzwelder by saying somehow that she wasn't disabled, for heaven's sakes. This is a terrible thing to say about anybody, particularly somebody that had worked so hard for so many years to be successful. Ms. Schwartzwelder applied for long-term disability, and Judge McFerry granted her disability based on the record. I only say that because this is the way it's been now for seven-plus years. It's always an attack on Ms. Schwartzwelder. She had an agreement. The agreement made it clear that if she got long-term disability, there would be an acceleration, a lump sum payment of those monthly transition compensation payments, not for the purpose of giving her the money. She was never going to get that money. And, Judge VanAske, you asked the question, well, shouldn't it have been a breach of contract or couldn't it have been a breach of contract, at least in the sense of bringing a claim or counterclaim? And the answer is no. I don't believe that. I haven't believed it from day one. This was always about an accounting, an accounting, not an actual receipt of cash. This was always about just apply the plain language in the agreement. If she becomes disabled or, by the way, if she were to die. If she were to die, the same thing would have happened. And the question then becomes, you say, well, doesn't she have to bring a claim or a counterclaim in order to get that compensation payment? Well, no, because she already had the money. She already has the money. So why should she have to bring a claim? She was already given the $850,000 loan. Why would she have to bring a claim or a counterclaim to get what she already has? No. And we presented this to Judge Schwab. She'd recover on that counterclaim and hand the money over to Merrill Lynch. But why would you have to do that? And then do you also have to bring another claim to what to do the accounting right, another claim to do all these other things right here? But let me put it in a practical context. You have the money. Somebody says, you owe me the money. And I say, no, I don't. I have an instrument that says I have a complete defense to it. I don't owe you the money because they cancel one another out. I just got my long-term disability. Or if I'm the estate, no, Ms. Schwarzwelder died. You want the money? Come and get it. And you can't get it because I have a defense. And the defense is the employment agreement, read in conjunction with a promissory note, which was created at almost the identical time. And it was part of the same transaction. By the way, one thing I think is fascinating, Merrill Lynch itself is the one that characterized this in language in its letters to the FINRA panel back in 2005. They're the ones that characterized it as something that could be forgiven. They're the ones that characterized this as an inextricable relationship between the employment agreement and the promissory note. I didn't do that. Ms. Schwarzwelder did. That's why they asked to stay the FINRA proceedings until Judge McVeary decided that the disability issue. Yes, we waited five years for that. If they really believed that there was no connection between these agreements, why in the world would we have waited five years? Five years. Mr. Shivers, I think you've suggested very persuasively that somehow the arbitration panel got it wrong, didn't understand the agreement or the two worked together. I say I think you've argued that very persuasively. But that's not the argument that you need to make, isn't it? Don't you have to argue that what the arbitration panel did was simply unsupportable? I do. People differ as to constructions of agreements and make a mistake, not be rational. Okay, let him finish the question. I'm sorry. Well, that's my question. Don't you have to go further? Well, Your Honor, let me answer it a couple of ways. First, this is the standard that Judge Schwab used was a completely irrational standard. He didn't use manifest disregard. I say that quickly because I want to make sure it's clear. I think Meryl has been arguing somehow that we were required to present every But, B, that's not the standard applicable to the completely irrational standard applied according to Hall Street and according to Judge Schwab. But to answer your question, Your Honor, yes, that is the standard that has to be met. And I believe it is met here. And I believe from day one it was met. If you, again, come back to the simple analysis of the language of the that there's not a connection, that there's not, in fact, an inextricable relationship between the employment agreement and the provision for satisfaction of the outstanding debts and the promissory note. So to answer your question, Your Honor, if we're left attention and Mr. Fortunato said, well, my gosh, if the court upholds Judge Schwab and finds that this is completely irrational, then everything is completely irrational. I don't follow that at all. I don't think that follows from the circumstances. Every one of these cases is necessarily different. Every one of them is going to have a different factual pattern. Here we have a simple case of interpretation of an agreement. The agreement can be read no rational way other than the way that I presented it to Judge Schwab and the way that I presented it to this court. I mean, to answer your question. Now, there's another thing, too, Your Honor. Judge Schwab didn't get into the other reasons that I had cited for vacating the panel ruling, but the panel went even further than simply saying that there's no connection. They said that. The panel said there's no connection between the employment agreement and the promissory note. Okay. Then they also said, and besides, you waived because you didn't assert an affirmative defense. Well, of course, the record shows we did. We made the affirmative defense. So the panel simply got that flat out wrong. Then the panel adopted what it called its deeming rule. Well, the deeming rule, according to the panel, was that Ms. Schwarzfeld remained an employee for two years. If she remained an employee for two years according to their deeming rule, that meant, well, then she should have been getting these pass-throughs for the next 24 months. But they didn't give her any pass-through. Judge Schwab didn't have to go there. But to answer your question, you've asked me, don't we have to meet this high standard of completely irrational? Yes. And I believe it meets it. It meets it first and foremost because the employment agreement in conjunction with the promissory note, I can't see any rational way of interpreting that other than they're connected. Secondly, we didn't waive the defense. The panel got it wrong, flat out wrong. They said we waived the defense. We didn't. Third, they adopted this deeming rule, and then they didn't follow it. They didn't follow it consistently. Judge Schwab pointed out in his opinion, he said, look, if nothing else, an arbitration panel is required to at least be internally consistent. And I hope that answered your question. Mr. Schivers, the panel read the release as simply listing a whole series of claims that your client did reserve and making no mention at all of the claim that's in dispute here today. Now, is it irrational of the arbitrators on that basis to say, well, we're not privy to the negotiations, but that seems to have been a claim that was abandoned? It is irrational if the panel looks at that and concludes that it wasn't properly a defense. It's irrational and contrary to law to characterize it as, in fact, a claim or a counterclaim. Judge Schwab put it very well, I thought. He said, effectively, what the panel said was that Ms. Schwartzwater was going to be entitled to double payment. Because if you take a look at the plain language of the employment agreement in connection with the promissory note, which cannot be separated, mathematically they can't be separated, let alone in terms of the content or the context or the intent of the parties, mathematically they can't be separated. But Judge Schwab very pointedly said, look, in effect what the panel ruled was Ms. Schwartzwater was, what, required to bring a claim, a counterclaim? And in addition, she had the defense, because she did have the defense. And the defense was, you can't get this money back from me. I have the money, you want the money, and I defend against it with my employment agreement. I have a defense. If we were to affirm, Judge Schwab, what goes back to the arbitration panel? All that can be done is vacate the award, so what happens next? I agree with you, by the way, I do. I think that's what you have to do. I think the law is clear that in a situation like this, you vacate, it goes back. And at that point, then the question becomes whether a panel, a subsequent panel, is required to apply the rulings. And I view it this way. You know, certain things become whether either race judicata or collateral estoppel by operation of a final judgment. Thank you. Anything else, Your Honor? No, thank you. Thank you. Thank you. Mr. Fortunato. Mr. Fortunato, may I put a question that, you're free to weave into your argument any place you want. I don't want to interrupt that. But there's a piece of the arbitrator's award that I found a little puzzling. I don't say it's the only piece, but a piece. In paragraph six, the panel finds that any such claim, claim we're dealing with, was waived by the terms of the settlement and release. Since the monthly transition compensation payments were not an accepted claim. Accordingly, the claim for monthly was not properly before the panel. Then comes a sentence that I find puzzling. Furthermore, the members expressed by way of dicta that the clear terms of the employment agreement appear not to support such a claim. What is an arbitration panel doing engaging in dicta? Where does that fit? It's not precedent or non-precedent for some further future award. I think that's a problem when you have two lawyers on the arbitration panel out of three members, Your Honor, is the best answer I can give you. I have no idea why they would suggest that in dicta they would have, had they not found, had she filed a claim. You're disclaiming that. I'm disclaiming it. Or waiving it. I'm waiving that piece because it's dicta and an arbitration award, and I'm standing in front of the Third Circuit, so I can't imagine what value it would have to you at all. But you're appropriate to point to section six of the award, because that's exactly what I was going to emphasize for the panel, which is that what Mr. Shivers has neglected to comment on is that he's asking this panel, just as he asked Judge Schwab, to substitute their judgment for that of the arbitration panel. And just second-guess what the decision was. And here you have right in front of you, leaving aside pass-through agreements judgment asking, I would ask the Court to look at pages 10 through 16 of our reply brief, because we addressed every bit of new case law that Ms. Schwartzwalder gave to the panel. I mean, gave to the Court, that she did not give to the panel, to show that these agreements are all over the place. The Killian agreement, the Hopgood agreement actually calls for forgiveness, as opposed to this agreement. But you should know that factually speaking, it's unrebutted in this case, that how the promissory note worked and how the employment agreement worked was that she made monthly payments on the note, and through her payroll system at Merrill Lynch, and she was paid a service bonus agreement. She was made a service bonus payment that was then taxable. There was no pass-through. I don't even know what that means. It wasn't an evidentiary piece in the underlying argument. But the reality is that this arbitration panel in six said, this is our judgment. We believe that she should have asserted this as a claim, and she failed to do it. Even if she didn't assert it as a claim, had she done that, we think that she released it as part of the settlement before the Third Circuit argument. And that's our judgment on the facts and the evidence. And the standard for this Court is, is that completely irrational, absolutely no basis at all in fact. So I would think that under 10A4, the appropriate thing would be to deny a motion to vacate the arbitration award, and then the Supreme Court and this Court has held, well, then section 9 USC section 9 or 9 USC section 9 kicks in, which is confirmation of the award. So our request on behalf of the appellant would be to overrule the vacater decision and then confirm the award because the Supreme Court in Hall said, there's, quote, nothing malleable about must grant confirmation unless one of the exclusive statutory grounds exists for vacater. So I think that the appropriate remedy is for this Court to, to reverse Judge Schwab's decision and confirm the arbitration award. If there's no further questions for the Court, I see my time has expired. No, thank you. Thank you, Your Honors. Thank you. Excuse me, counsel. Stay, stay where you are.